## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH JOHN MCCLOSKEY, JR.,

     Plaintiff,

v.

MARK PULST, in his individual capacity, and
JESSICA KENNEDY, in her individual capacity,
City of Eastpointe, and
John Doe(s) 1-10

     Defendants.

Case No.

Hon.

**Jury Trial Demanded**

---

MICHAEL L. JONES (P85223)
JONATHAN R. MARKO (P72450)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES**, Plaintiff Kenneth John McCloskey, Jr., by and through his

attorneys, Marko Law, PLLC, for his Complaint against Defendants, and states:

1.    This is a civil rights action arising out of the wrongful investigation,

arrest, and malicious prosecution of Plaintiff Kenneth McCloskey, Jr. by Defendant

Detective Mark Pulst and Defendant Jessica Kennedy. Defendants initiated and

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

continued a criminal prosecution against Mr. McCloskey for first-degree criminal sexual conduct based on allegations they knew or had obvious reasons to know were unreliable, while deliberately or recklessly disregarding and omitting substantial exculpatory evidence that would have vitiated probable cause.

2.      As a direct result of Defendants' unconstitutional conduct, Mr. McCloskey was arrested, charged with two counts of a life-offense felony, subjected to the humiliation of a public prosecution, and forced to endure pretrial detention and onerous bond conditions, including GPS tethering, before the criminal case against him was dismissed in his favor. Plaintiff seeks damages under 42 U.S.C. § 1983 for malicious prosecution and violations of his Fourth Amendment rights.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Plaintiff's claims arise under the Constitution of the United States and 42 U.S.C. § 1983. This Court may exercise supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), because a substantial part of

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                                    Michael L. Jones, Esq.
Case No.: 25--                                                                              Jon R. Marko, Esq.

the events and omissions giving rise to Plaintiff's claims occurred within this judicial district, specifically in Macomb County, Michigan.

## **PARTIES**

5.      Plaintiff, Kenneth John McCloskey, Jr., is an individual and a citizen of the State of Michigan, and was at all relevant times a resident of Macomb County, Michigan.

6.      Defendant, Mark Pulst, was at all relevant times a Detective employed by the Eastpointe Police Department. In performing the acts alleged in this Complaint, Defendant Pulst acted under color of law. Defendant Pulst is sued in his individual capacity.

7.      Defendant, Jessica Kennedy, was at all relevant times an Investigator for Child Protective Services (CPS), a division of the Michigan Department of Health and Human Services. In performing the acts alleged in this Complaint, Defendant Kennedy acted under color of law. Defendant Kennedy is sued in her individual capacity.

8.      Defendant, John Doe(s) 1-10 were, at all relevant times, employed as corrections officers or other law enforcement personnel by the City of Eastpointe and/or the Eastpointe Police Department. Their true identities are unknown to Plaintiff at this time. Defendants John Doe were responsible for the care, custody,

safety, and medical well-being of detainees at the Eastpointe Police Department jail, including Plaintiff. In performing the acts alleged herein, Defendants John Doe acted under color of law and are sued in their individual capacities.

9.      Defendant City of Eastpointe is a municipal corporation organized under the laws of the State of Michigan. It is responsible for the operation of the Eastpointe Police Department and for establishing and enforcing the policies, practices, and customs of its police officers and correctional staff, including those policies regarding the provision of food and necessary medical care to individuals in its custody.

## STATEMENT OF FACTS

10.     Plaintiff Kenneth McCloskey is the father of Jason McCloskey and the grandfather of Jason's children, A.M (hereinafter "the child" or "grandchild" (DOB: 02/02/2018) and her brother A.M[1].

### A. The Contentious Relationship Between Kenneth McCloskey and His Son

11.     In late 2022, after Jason and his wife, Christina McCloskey, were evicted from their home, Plaintiff allowed them and their children to move into his home in Eastpointe, Michigan.

---

[1] For privacy purposes, only initials of the children are used throughout the complaint. The children have the same initials. However, the brother (A.M.) is only mentioned once.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

12.     The living arrangement was fraught with conflict. During their stay, Jason and Christina did not work and lived on public assistance, while Plaintiff provided for the family, including waking the children, feeding them, and getting them ready for school.

13.     The relationship deteriorated to the point that in July 2023, Plaintiff was forced to file for an eviction to have Jason and Christina removed from his home.

14.     The eviction process was acrimonious and culminated in Jason and Christina physically assaulting Plaintiff.

15.     Over the course of the time they lived together, approximately fifteen (15) separate police reports were filed documenting incidents and disputes between Plaintiff, Jason, and Christina.

16.     This history of severe family conflict, eviction, and violence provided Jason and Christina with a clear and powerful motive to retaliate against Plaintiff by fabricating false allegations.

### B. The Baseless Allegations and Defendant Pulst's Investigation

17.     On or about February 12, 2025, Defendant Detective Mark Pulst of the Eastpointe Police Department was assigned to investigate a law enforcement notification from Defendant Jessica Kennedy of Child Protective Services (CPS) regarding an allegation of criminal sexual conduct against Plaintiff.

**Complaint and Jury Demand**

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

JM MARKO LAW

18. The allegation, originating from Jason and Christina McCloskey, was that Plaintiff had licked the vagina of his then five-year-old granddaughter.

19. As part of his initial investigation, Defendant Pulst became aware of a police report from the Ferndale Police Department (Case No. 250003080), filed by Jason McCloskey, which alleged Plaintiff was stalking his grandchild by watching her at her bus stop. This report further demonstrated the parents' animosity and concerted effort to incriminate Plaintiff.

20. Without any independent corroboration, and despite the obvious indicators of a retaliatory motive, Defendant Pulst proceeded with the investigation by contacting Jason and Christina to arrange a forensic interview of the child at the Macomb County Care House.

### C. The Care House Interview and Its Obvious Deficiencies

21. On February 19, 2025, Jason and Christina brought the child to the Care House for an interview with Abbey Gjecj.

22. During the interview, the child's statements were inconsistent, exaggerated, and bore the hallmarks of a coached child. For instance, she claimed the alleged abuse happened "like 100 times."

**Complaint and Jury Demand**
Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

23.     She also alleged the incident occurred on the day Plaintiff "kicked them out," a statement that was factually inaccurate, as Plaintiff had evicted his son Jason, not the children.

24.     When asked about the incident, the child stated she had discussed it with "My mom and my mom and my dad," indicating significant parental influence and contamination of her account.

25.     The sole "evidence" produced from the interview was a drawing on which she had written, "Ken lic my privit."

### D. Defendant Pulst Disregards Exculpatory Evidence and Initiates Prosecution

26.     On February 28, 2025, Defendant Pulst interviewed Plaintiff. During this interview, Plaintiff fully cooperated and detailed the extensive and bitter history of conflict with his son and daughter-in-law, including the eviction, the physical assault they committed against him, and the numerous police reports.

27.     Defendant Pulst was therefore in possession of substantial and compelling exculpatory evidence. He knew that the accusers, Jason and Christina, harbored extreme animosity toward Plaintiff and had a clear motive to fabricate charges for revenge.

28.     As a law enforcement officer, Defendant Pulst knew or should have known that allegations from a young child in the midst of a toxic and litigious family dispute are inherently unreliable and require careful, objective corroboration.

29.     Defendant Pulst also knew that there was an apparent and overwhelming reason to believe the complaining parents were lying to retaliate against Plaintiff and were coaching their child.

30.     In a manner consistent with the unconstitutional conduct described in *Ahlers v. Schebil*, 188 F.3d 365 (6th Cir. 1999), Defendant Pulst turned a blind eye to all of the exculpatory evidence. He made no effort to investigate the credibility of Jason and Christina or their history of conflict with Plaintiff.

31.     Instead, with deliberate or reckless disregard for the truth, Defendant Pulst omitted the critical exculpatory evidence of the family conflict, the eviction, the assault, and the parents' motive from his warrant application and reports to the prosecutor. These omissions were material and essential to creating a false picture of probable cause.

32.     Based on this incomplete and misleading presentation of the facts, Defendant Pulst made, influenced, and participated in the decision to initiate a criminal prosecution against Plaintiff.

### E. The Prosecution Collapses and is Dismissed in Plaintiff's Favor

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                          Jon R. Marko, Esq.

33.     As a direct result of Defendant Pulst's unconstitutional actions, the Macomb County Prosecutor's Office charged Plaintiff Kenneth McCloskey with two counts of Criminal Sexual Conduct in the First Degree, a felony offense carrying a sentence of up to life in prison. The case was docketed as Case No. 25-120-FY in the 38th Judicial District Court.

34.     A preliminary examination was held before the Honorable Kathleen Galen on April 1, 2025.

35.     At the examination, A.M. (hereinafter "the child" or "grandchild") testified and confirmed that her "grandpa and your dad Jason don't always get along."

36.     After her testimony, the prosecuting attorney conceded on the record that the prosecution's case had completely failed, stating, "I would agree that she hasn't made a specific allegation as to any sexual acts, your Honor."

37.     Finding no probable cause to support the charges, Judge Galen dismissed the entire criminal proceeding against Plaintiff. This dismissal constituted a termination of the proceedings in Plaintiff's favor.

### F. Plaintiff's Damages

38.     As a direct and proximate result of the malicious prosecution initiated by Defendants, Plaintiff Kenneth McCloskey suffered a significant deprivation of

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                          Jon R. Marko, Esq.

his liberty. He was arrested, incarcerated, and forced to appear in court as a criminal defendant.

39.     To secure his release from jail pending trial, Plaintiff was required to post a $10,000 cash bond on March 14, 2025. Detective Pulst's conduct at the bond hearing reflected clear malice. Despite having no legitimate basis to influence the court's decision, he personally appeared and insisted that a 10% bond was unacceptable, urging the judge instead to impose the full $100,000 cash bond. Detective Pulst appeared visibly angry and intent on preventing Plaintiff's release— demonstrating a deliberate effort to inflict further hardship by ensuring Plaintiff remained incarcerated or financially burdened in preparing my defense.

40.     Furthermore, Plaintiff was subjected to onerous and humiliating bond conditions, including being forced to wear a GPS steel cuff tether, which severely restricted his freedom of movement and served as a constant badge of a crime he did not commit.

41.     Plaintiff suffered, and continues to suffer, severe emotional distress, humiliation, fear, anxiety, and damage to his reputation in the community as a result of being falsely accused of a heinous crime.

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*          Michael L. Jones, Esq.
Case No.: 25--                                                Jon R. Marko, Esq.

42.    Plaintiff was forced to retain legal counsel and incur substantial attorney's fees and costs in order to defend himself against the baseless and malicious charges.

### G. Defendant Kennedy's Complicity in the Malicious Prosecution

43.    Defendant Jessica Kennedy, in her capacity as a CPS investigator, had an independent duty to conduct a reasonable and objective investigation into the allegations against Plaintiff.

44.    Defendant Kennedy knew or should have known about the same substantial exculpatory evidence as Defendant Pulst, including the extreme animosity Jason and Christina held toward Plaintiff, their recent eviction, and their clear motive to fabricate allegations in retaliation.

45.    Indeed, Plaintiff himself had attempted to engage with CPS regarding his concerns for the health and safety of his grandchildren due to the conduct of Jason and Christina, putting Defendant Kennedy and her agency on notice of the severe, ongoing family conflict.

46.    Despite this knowledge, Defendant Kennedy, acting with deliberate or reckless disregard for the truth, made, influenced, or participated in the decision to prosecute Plaintiff by forwarding the uncorroborated and facially unreliable

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

allegations to law enforcement without also providing the critical, offsetting exculpatory information.

47. By ignoring the context of the toxic family dispute and the obvious signs of retaliatory motive, Defendant Kennedy acted in concert with Defendant Pulst to initiate a baseless criminal prosecution, thereby violating Plaintiff's clearly established constitutional rights.

### H. Defendants Deliberate Indifference

48. On March 6, 2025, Defendant Detective Mark Pulst arrested Plaintiff Kenneth McCloskey at his residence and transported him to the Eastpointe Police Department for booking.

49. Plaintiff is a 57-year-old man who suffers from serious, pre-existing medical conditions, including hypertension and Type 2 Diabetes.

50. Plaintiff's diabetic condition requires careful management, including timely access to food and his prescribed medications, Metformin and Ozempic, to prevent dangerous fluctuations in his blood sugar levels.

51. Upon booking at the Eastpointe Police Department jail at approximately 12:25 p.m., Defendant Pulst and other officers were made aware of Plaintiff's serious medical needs. A Macomb County Sheriff's Office Jail Detention

**Complaint and Jury Demand**

Card completed during intake explicitly noted "TYPE 2 DIABETES" under the section for known medical problems.

52.     Despite being aware of Plaintiff's serious medical needs, Defendant Pulst and the John Doe Corrections Officers responsible for his care failed to provide Plaintiff with any food for several hours while he was detained in a holding cell.

53.     Plaintiff informed Defendant Pulst and/or the John Doe Officers that he was diabetic, that he needed food to manage his condition, and that he needed to be taken to a hospital for his medication.

54.     Defendant Pulst and the John Doe Officers refused Plaintiff's requests for food and denied his requests for transport to a hospital.

55.     As the hours passed without food or medical attention, Plaintiff's condition deteriorated. He began to feel short of breath and nauseous due to his unmanaged blood sugar and hypertension.

56.     As a direct and proximate result of being denied food and necessary medical care, Plaintiff suffered an acute medical emergency. At approximately 4:00 p.m., he experienced a syncopal episode, lost consciousness, and fell to the floor of his holding cell, striking his head.

57.     Only after Plaintiff lost consciousness did Defendants call for emergency medical assistance.

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                      Michael L. Jones, Esq.
Case No.: 25--                                                             Jon R. Marko, Esq.

58.    Paramedics from Medstar, Inc. responded to the Eastpointe Police Department jail (Incident #36419-25) and found Plaintiff on the floor of the cell. Their assessment revealed a dangerously low blood glucose level of 60 mg/dL and critically high blood pressure of 176/90 mmHg. Blood sugar below 70 mg/dl is harmful and can hurt a person.

59.    Plaintiff was transported by ambulance to the Ascension Macomb-Oakland Hospital, Warren Campus, for emergency treatment. He was admitted at 5:12 p.m. on March 6, 2025.

60.    Medical records from Ascension Macomb-Oakland Hospital document that the reason for Plaintiff's emergency visit was "SYNCOPE IN HOLDING CELL."

61.    The hospital's emergency department confirmed Plaintiff's history of hypertension and diabetes and diagnosed him with an "Acute syncopal episode." Lab results upon admission showed his random glucose level was 374 mg/dL, confirming a state of severe hyperglycemia.

62.    The deliberate indifference of Defendant Pulst and the John Doe Defendants in denying Plaintiff food and refusing his requests for medical assistance was the direct and proximate cause of his medical emergency, loss of consciousness, fall, head injury, and the associated physical pain and severe emotional distress.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – Malicious Prosecution
(Against Defendants Pulst and Kennedy)

63.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

64.     To succeed on a malicious prosecution claim under 42 U.S.C. § 1983, a plaintiff must prove that: (1) a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

65.     Defendants Pulst and Kennedy, acting under color of law, made, influenced, or participated in the decision to initiate a criminal prosecution against Plaintiff.

66.     Defendant Pulst directly initiated the prosecution by, among other acts, submitting investigative reports containing material omissions and falsehoods to the Macomb County Prosecutor's Office and seeking an arrest warrant against Plaintiff.

**Complaint and Jury Demand**

67.     Defendant Kennedy made, influenced, or participated in the decision to prosecute by initiating the law enforcement notification and forwarding the allegations against Plaintiff while deliberately or with reckless disregard for the truth failing to disclose the substantial exculpatory evidence of which she was aware, including the severe family conflict and Plaintiff's prior contacts with CPS regarding his concerns for the children's welfare.

68.     There was a complete lack of probable cause for the criminal prosecution. As law enforcement and child protective services officers, Defendants knew or should have known that probable cause does not exist where there is an "apparent reason to question the person's reliability." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).

69.     Defendants had overwhelming reasons to question the reliability and motives of the complaining parents, Jason and Christina McCloskey, including the bitter history of family conflict, Plaintiff's recent eviction of them from his home, the physical assault they committed against him, and the approximately fifteen police reports documenting their disputes.

70.     Instead of conducting a fair and objective investigation, Defendants turned a "blind eye toward potentially exculpatory evidence" in violation of

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*
Case No.: 25--

Michael L. Jones, Esq.
Jon R. Marko, Esq.

Plaintiff's clearly established rights. *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999).

71.     The prosecution was based solely on the uncorroborated and inconsistent statements of a seven-year-old child, who later testified under oath that her parents told her what to say regarding Plaintiff, confirming the allegations were coached and unreliable.

72.     As a consequence of the legal proceedings, Plaintiff suffered a significant deprivation of liberty apart from his initial seizure. He was incarcerated, forced to post a $10,000 cash bond to secure his release, and subjected to onerous pretrial bond conditions, including being forced to wear a GPS steel cuff tether, which constituted an ongoing seizure and severely restricted his liberty.

73.     The criminal proceeding, *People v. Kenneth McCloskey*, Case No. 25-120-FY, was resolved in Plaintiff's favor when the Honorable Kathleen Galen of the 38th Judicial District Court dismissed all charges against him on April 1, 2025, after finding no probable cause at the preliminary examination. A formal judgment of dismissal was entered on or about April 10, 2025.

74.     Defendants acted with malice or, at a minimum, with a reckless disregard for the truth and Plaintiff's rights by pursuing a prosecution based on

**Complaint and Jury Demand**

coached and unreliable allegations while ignoring a wealth of exculpatory evidence that vitiated any semblance of probable cause.

75.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered irreparable harm, including loss of liberty, severe emotional distress, humiliation, fear, anxiety, damage to his reputation, and significant financial losses, including attorneys' fees and costs.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Pulst and Kennedy, jointly and severally, for compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and equitable.

## COUNT II
### 42 U.S.C. § 1983 – Fourth Amendment Unlawful Seizure
(Against Defendants Pulst and Kennedy)

76.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

77.     The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects the right of individuals to be free from unreasonable seizures, including arrests effectuated without probable cause.

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                          Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

78.     An officer violates the Fourth Amendment when, with an "intention to mislead," they exclude "critical information from the affidavit, and the omission is critical to the finding of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998).

79.     Defendants Pulst and Kennedy, in their investigatory capacities, caused Plaintiff to be unlawfully seized by deliberately or recklessly omitting critical, material exculpatory information from their reports and communications with the prosecuting attorney and the court, thereby creating a false and misleading basis for probable cause.

80.     The information that Defendants omitted was material and critical to the probable cause determination, and included, but was not limited to:

  a. The extensive and severe history of conflict between Plaintiff and the complaining parents, Jason and Christina McCloskey;

  b. The fact that Plaintiff had recently evicted Jason and Christina from his home;

  c. The fact that Jason and Christina had physically assaulted Plaintiff;
  d. The existence of approximately fifteen police reports documenting the family strife, which established a clear and powerful motive for the parents to fabricate retaliatory charges; and

  e. The fact that the child witness's statements were inconsistent, uncorroborated, and bore obvious signs of parental coaching and contamination.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

81.     Had this critical exculpatory information been included in the warrant application and reports to the prosecutor, no reasonable official or magistrate would have found that probable cause existed to arrest and prosecute Plaintiff.

82.     Defendants' conduct violated Plaintiff's clearly established Fourth Amendment right to be free from seizure absent probable cause. Reasonable officers in Defendants' positions would have known that fabricating probable cause by deliberately or recklessly omitting material exculpatory information is unconstitutional. Therefore, Defendants are not entitled to qualified immunity.

83.     As a direct and proximate result of Defendants' unconstitutional conduct, Plaintiff was unlawfully seized, arrested, incarcerated, and subjected to onerous conditions of release, causing him to suffer a loss of liberty, humiliation, severe emotional distress, and other damages.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Pulst and Kennedy, jointly and severally, for compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and equitable.

### COUNT III
### 42 U.S.C. § 1983 – Civil Conspiracy
(Against Defendants Pulst and Kennedy)

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                          Jon R. Marko, Esq.

84.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

85.    A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). The elements require a plaintiff to show that (1) a single plan existed, (2) the defendants shared in the general conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury.

86.    Defendants Pulst and Kennedy engaged in a civil conspiracy by acting in concert to accomplish the unlawful prosecution of Plaintiff without probable cause.

87.    A single plan existed between Defendants Pulst and Kennedy to pursue criminal charges against Plaintiff based on unsubstantiated allegations while mutually disregarding and suppressing all known exculpatory evidence that would have demonstrated the lack of probable cause.

88.    Defendants shared in the general conspiratorial objective to deprive Plaintiff of his Fourth Amendment right to be free from malicious prosecution and unreasonable seizure.

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*    Michael L. Jones, Esq.
Case No.: 25--    Jon R. Marko, Esq.

89.    In furtherance of their conspiracy, Defendants committed overt acts, including but not limited to:

    a.  Defendant Kennedy initiated an official law enforcement notification based on the complaint from Jason and Christina while failing to include the critical context of their severe bias and retaliatory motive;

    b.  Defendant Pulst, upon receiving the notification, proceeded with the investigation by purposefully ignoring the exculpatory evidence provided by Plaintiff and the public record;

    c.  Defendants Pulst and Kennedy acted in concert to build a case based on the obviously unreliable statements of a coached seven-year-old child; and

    d.  Defendant Pulst made, influenced, or participated in the decision to seek an arrest warrant and formal charges by presenting a misleading and incomplete version of the facts to the prosecutor.

90.    As a direct and proximate result of Defendants' conspiracy, Plaintiff was subjected to a malicious prosecution, unlawfully seized, and deprived of his rights under the Fourth Amendment, causing him to suffer a loss of liberty, severe emotional distress, reputational harm, and financial damages.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Pulst and Kennedy, jointly and severally, for compensatory damages, punitive damages, costs, and attorney fees pursuant to 42 U.S.C. § 1988, and any other relief this Court deems just and equitable.

## COUNT IV
## Malicious Prosecution (Michigan Law)
### (Against Defendants Pulst and Kennedy)

91.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

92.    Defendants Pulst and Kennedy are liable for malicious prosecution under the laws of the State of Michigan.

93.    The elements of malicious prosecution under Michigan law are: (1) a criminal proceeding was instituted by the defendant against the plaintiff; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant lacked probable cause for initiating the proceeding; and (4) the defendant acted with malice or a primary purpose other than that of bringing the offender to justice.

94.    As detailed above, Defendants Pulst and Kennedy instituted and continued a criminal proceeding against Plaintiff by investigating, preparing reports with material omissions, and seeking charges based on allegations they knew or had obvious reasons to know were unreliable and retaliatory.

95.    The proceeding terminated in Plaintiff's favor on April 1, 2025, when the 38th Judicial District Court dismissed all charges for lack of probable cause.

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*
Case No.: 25--

Michael L. Jones, Esq.
Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

96.    Defendants lacked probable cause for the reasons stated throughout this Complaint, including their knowledge of the accusers' severe bias and motive to fabricate, and the complete lack of any reliable, corroborating evidence.

97.    Defendants acted with malice, which in this context means they acted with a purpose other than securing the fair administration of justice. Their malice is demonstrated by their deliberate or reckless disregard for Plaintiff's rights and their willingness to pursue a prosecution despite overwhelming evidence that it was baseless and founded on a retaliatory family dispute.

98.    As a direct and proximate result of Defendants' state law tort of malicious prosecution, Plaintiff suffered severe damages, including but not limited to the loss of his liberty, damage to his reputation, humiliation, mental anguish, and the incurrence of significant legal fees and costs.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Pulst and Kennedy, jointly and severally, for compensatory and exemplary damages in an amount to be determined at trial, plus costs, interest, and any other relief this Court deems just and equitable.

### COUNT V
### Gross Negligence
(Against Defendants Pulst and Kennedy)

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*          Michael L. Jones, Esq.
Case No.: 25--                                              Jon R. Marko, Esq.

99. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

100. Under Michigan law, governmental employees are not immune from tort liability for conduct that amounts to gross negligence that is the proximate cause of a plaintiff's injury. MCL § 691.1407(2)(c).

101. "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(8)(a).

102. At all relevant times, Defendants Pulst and Kennedy were acting in the course and scope of their employment as a police detective and a CPS investigator, respectively. They were under a duty to avoid engaging in conduct so reckless that it demonstrated a substantial lack of concern for whether Plaintiff would suffer injury from a baseless prosecution.

103. Defendants breached this duty and engaged in grossly negligent conduct by, among other things:

   a. Ignoring and failing to investigate the overwhelming evidence of the complaining parents' retaliatory motive;

   b. Proceeding with a prosecution based entirely on the uncorroborated, inconsistent, and coached statements of a young child;

   c. Failing to disclose material exculpatory evidence to the prosecutor and the court; and

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*          Michael L. Jones, Esq.
Case No.: 25--          Jon R. Marko, Esq.

d.  Initiating a life-offense felony prosecution against Plaintiff in the face of facts that made it obvious the charges were baseless.

104.  This conduct was so reckless as to demonstrate a substantial lack of concern for whether Plaintiff would be arrested, incarcerated, publicly shamed, and deprived of his liberty as a result of their investigation.

105.  The grossly negligent conduct of Defendants was the proximate cause of the malicious prosecution of Plaintiff and the resulting injuries and damages he sustained, including loss of liberty, emotional distress, reputational harm, and financial loss.

**WHEREFORE,** Plaintiff seeks judgment against Defendants Pulst and Kennedy, jointly and severally, for compensatory and exemplary damages in an amount to be determined at trial, plus costs, interest, and any other relief this Court deems just and equitable.

## COUNT VII
### 42 U.S.C. § 1983
### Deliberate Indifference to Serious Medical Needs
(Against Defendant Pulst and John Doe Defendants)

106.  Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

107.  At all relevant times, Plaintiff was a pretrial detainee in the custody of the Eastpointe Police Department, and Defendants Pulst and John Doe Corrections

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*          Michael L. Jones, Esq.
Case No.: 25--                                                                              Jon R. Marko, Esq.

Officers were acting under color of state law in their capacity as law enforcement and/or corrections personnel.

108.   Plaintiff's pre-existing and known conditions of hypertension and Type 2 Diabetes constituted serious medical needs, which are so obvious that a layperson would easily recognize the necessity for a doctor's attention and for basic management, such as timely access to food. Untreated, these conditions posed a substantial and obvious risk of serious harm, including a hyperglycemic or hypertensive crisis, loss of consciousness, and other severe complications.

109.   Defendants Pulst and John Doe had actual knowledge of Plaintiff's serious medical needs. They were made aware of his conditions both verbally by Plaintiff and through his intake screening documentation, which explicitly noted he had "TYPE 2 DIABETES."

110.   Despite their knowledge of Plaintiff's serious medical needs and the substantial risk of harm, Defendants Pulst and John Doe acted with deliberate indifference by consciously disregarding that risk. Their indifferent conduct included, but is not limited to:

a. Refusing to provide Plaintiff with any food for several hours, despite his known diabetic condition;

b. Explicitly denying Plaintiff's requests to be taken to a hospital to receive his medication and appropriate medical care; and

**Complaint and Jury Demand**

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*
Case No.: 25--

Michael L. Jones, Esq.
Jon R. Marko, Esq.

Case 2:25-cv-13359-LJM-KGA   ECF No. 1, PageID.28   Filed 10/22/25   Page 28 of 36

c. Failing to take any action when Plaintiff's condition visibly deteriorated and he complained of feeling short of breath and nauseous.

111. The conduct of Defendants Pulst and John Doe was not mere negligence, but rather a reckless and callous disregard for Plaintiff's health and safety, which they knew was at substantial risk due to their denial of basic care.

112. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff's condition severely worsened, causing him to suffer an acute syncopal episode. He lost consciousness, fell to the floor of his cell, and struck his head, necessitating emergency transport to Ascension Macomb-Oakland Hospital.

113. As a further direct and proximate result of Defendants' conduct, Plaintiff suffered a hyperglycemic and hypertensive crisis, a head injury, unnecessary physical pain and suffering, and severe emotional distress, humiliation, fear, and anxiety.

114. Defendants' actions and inactions as described herein constituted a violation of Plaintiff's clearly established rights under the Fourteenth Amendment to the United States Constitution to be free from punishment as a pretrial detainee and to receive adequate care for his serious medical needs.

115. As a proximate result of the violation of his constitutional rights, Plaintiff is entitled to an award of compensatory damages for his physical injuries,

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*   Michael L. Jones, Esq.
Case No.: 25--   Jon R. Marko, Esq.

pain, suffering, and emotional distress, as well as an award of punitive damages to punish Defendants for their malicious and reckless conduct and to deter similar conduct in the future.

**COUNT VIII**
**42 U.S.C. § 1983**
**MONELL CLAIM**
(Against Defendant City of Eastpointe)

116. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

117. At all relevant times, Defendant City of Eastpointe's employees, including Defendant Pulst and the John Doe Corrections Officers, were acting within the scope of their employment, and their actions were taken under color of state law.

118. Defendant City of Eastpointe maintained policies, customs, and/or practices that were the moving force behind the constitutional violations suffered by Plaintiff, including but not limited to:

   a. A policy, custom, or practice of failing to provide adequate medical screening and necessary care, including timely access to food and medication, for detainees with known serious medical conditions like diabetes and hypertension;

   b. A policy, custom, or practice of failing to adequately train its police and corrections officers on how to recognize and properly respond to the needs of detainees with serious medical conditions and to unfolding medical emergencies in custody;

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                            Jon R. Marko, Esq.

c. A custom or practice of permitting officers to ignore or deny detainees' requests for necessary food, medication, or transport to a medical facility, demonstrating deliberate indifference to their health and safety; and

d. A policy or practice of failing to adequately supervise and/or discipline officers who exhibit deliberate indifference to the serious medical needs of detainees, thereby ratifying such unconstitutional conduct.

119. Defendant City of Eastpointe's failure to implement adequate policies, training, and supervision amounts to deliberate indifference to the clearly established constitutional rights of pretrial detainees in its custody. The need for training and policies to address common and life-threatening conditions like diabetes is so obvious that the failure to do so constitutes deliberate indifference.

120. The conduct of multiple officers, including Defendant Pulst and the John Doe Defendants, in uniformly denying Plaintiff's requests for basic sustenance and medical care demonstrates a pattern of unconstitutional conduct that was sanctioned, tolerated, or caused by the City of Eastpointe's policies and customs.

121. As a direct and proximate result of the City of Eastpointe's unconstitutional policies, customs, and practices, Plaintiff was subjected to a deprivation of his constitutional rights under the Fourteenth Amendment, causing him to suffer a medical emergency, physical injury, severe pain and suffering, emotional distress, and other damages.

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*          Michael L. Jones, Esq.
Case No.: 25--                                                 Jon R. Marko, Esq.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

122.   As a direct and proximate result of the unconstitutional acts of Defendant City of Eastpointe, Plaintiff has sustained a violation of his rights under the law and, as a result, is entitled to compensatory damages and reasonable attorneys' fees and costs.

## COUNT IX
## GROSS NEGLIGENCE
(Against Defendant Pulst and John Doe Defendants)

123.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

124.   Under Michigan law, governmental employees are not immune from tort liability for conduct that amounts to gross negligence that is the proximate cause of a plaintiff's injury. MCL § 691.1407(2)(c).

125.   "Gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(8)(a).

126.   At all relevant times, Defendants Pulst and John Doe were acting in the course and scope of their employment as a police detective and corrections officers, respectively. They were under a duty to provide for the basic needs of detainees in their custody, including providing adequate medical care for known serious medical needs, and to avoid engaging in conduct so reckless that it demonstrated a substantial lack of concern for whether Plaintiff would suffer injury.

127.    Defendants Pulst and John Doe breached this duty and engaged in grossly negligent conduct by, among other things:

    a.  Failing to provide any food to Plaintiff for several hours, despite having actual knowledge that he suffered from Type 2 Diabetes and required regular nutrition to manage his condition;

    b.  Consciously disregarding and refusing Plaintiff's direct requests to be taken to a hospital for his medication and necessary medical care;

    c.  Ignoring Plaintiff's obvious and escalating signs of physical deterioration, including his complaints of feeling short of breath and nauseous;

    d.  Failing to timely request medical assistance for Plaintiff, instead waiting until after he had lost consciousness, fallen, and struck his head;

    e.  Intentionally delaying Plaintiff's access to appropriate and necessary medical care for his life-threatening conditions; and

    f.  Failing to follow generally accepted practices and procedures for the care and supervision of detainees with known serious medical conditions.

128.    This conduct was so reckless as to demonstrate a substantial lack of concern for whether Plaintiff would suffer a medical emergency, loss of consciousness, physical injury, or other serious harm as a result of their deliberate indifference and failure to provide basic care.

129.    The grossly negligent conduct of Defendants Pulst and John Doe was the proximate cause of Plaintiff's injuries and damages. As a direct result of their

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

recklessness, Plaintiff suffered an acute syncopal episode, a hyperglycemic and hypertensive crisis, loss of consciousness, a fall resulting in a head injury, unnecessary physical pain and suffering, and severe emotional distress.

**WHEREFORE**, Plaintiff seeks judgment against Defendants Pulst and John Doe, jointly and severally, for compensatory and exemplary damages in an amount to be determined at trial, plus costs, interest, and any other relief this Court deems just and equitable.

## **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff, KENNETH JOHN MCCLOSKEY, JR., respectfully requests that this Honorable Court enter a judgment against Defendants, jointly and severally, as follows:

a.  Awarding Plaintiff compensation for all economic and non-economic damages, including but not limited to damages for his loss of liberty, emotional distress, humiliation, fear, anxiety, reputational harm, and financial losses, in whatever amount he is found to be entitled;

b.  Awarding Plaintiff exemplary damages against Defendants in an amount to be determined at trial;

c.  Awarding Plaintiff punitive damages against Defendants for their malicious, willful, and reckless conduct, in an amount sufficient to punish them and to deter them and others from engaging in similar conduct in the future;

d.  Awarding Plaintiff his costs, pre-judgment and post-judgment interest, and reasonable attorney fees pursuant to 42 U.S.C. § 1988 and as otherwise permitted by law; and

e.     Awarding Plaintiff any other and further relief this Court deems just and proper.

Respectfully submitted,

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

Dated: October 22, 2025

**Complaint and Jury Demand**
*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*                    Michael L. Jones, Esq.
Case No.: 25--                                                          Jon R. Marko, Esq.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KENNETH JOHN MCCLOSKEY, JR.,

      Plaintiff,

v.

MARK PULST, in his individual capacity,
and
JESSICA KENNEDY, in her individual
capacity,
City of Eastpointe, and
John Doe(s) 1-10

      Defendants.

Case No.

Hon.

**Jury Trial Demanded**

---

MICHAEL L. JONES (P85223)
JONATHAN R. MARKO (P72450)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

---

## <u>DEMAND FOR A TRIAL BY JURY</u>

---

*Kenneth McCloskey v. Mark Pulst and Jessica Kennedy*
Case No.: 25--

Michael L. Jones, Esq.
Jon R. Marko, Esq

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

**NOW COMES**, Plaintiff, KENNETH JOHN MCCLOSKEY, JR., by and through his attorneys, Marko Law, PLLC, and hereby demands a trial by jury on all issues so triable in the above-captioned matter.

Respectfully submitted,

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
Attorneys for Plaintiff
**Marko Law, PLLC**
220 W. Congress, Fourth Floor
Detroit, MI 48226
Ph: (313) 777-7777
michael@markolaw.com

Dated: October 22, 2025

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **October 22, 2025,** via:

- ☐ U.S. Mail
- ☐ Hand Delivered
- ☐ Certified Mail
- ☒ ECF System

- ☐ Fax
- ☐ Overnight Carrier
- ☐ Other: Mi-FILE Truefiling
- ☐ Email

*/s/ Dae'Aunee Charles*